UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Vladimir Teichberg,

    Plaintiff,

v.

Christopher Smith, in his individual
capacity as a Minneapolis Police Officer,
Susan York, in her individual
capacity as a Minneapolis Police Officer,
Garry Nordine, in his individual capacity
as a Minneapolis Police Officer, Thomas Stiller, in
his individual capacity as a Minneapolis Police
Officer, and John Doe, in his
individual capacity as a Minneapolis Officer,
and the City of Minneapolis,

    Defendants.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 09-456

_____

Ted Dooley, Ted Dooley Law Office, LLC and Peter J. Nickitas, Peter J. Nickitas Law Office, LLC, Counsel for Plaintiff.

Jon K. Iverson, Jason M. Hiveley and Andrea B. Wing, Iverson Reuvers, Counsel for Defendants.

_____

This matter is before the Court upon Defendants' Motion for Summary Judgment.

I.    **Factual Background**

The facts of this case are largely undisputed. From September 1 through 4, 2008, the cities of St. Paul and Minneapolis, Minnesota hosted the Republican National Convention ("RNC"). Prior to, and during this time, Minneapolis police officers were told to be on heightened alert for individuals who would intend to disrupt or interrupt the RNC and target critical infrastructures, including rail yards. (Affidavit of Jason Hiveley, Ex. A (York Dep. at 18-19).)

On August 26, 2008, at around 1:40 a.m., Minneapolis Police Officers Susan York and Christopher Smith observed Plaintiff Vladimir Teichberg, Olivia Katz[1] and Anita Braithwaite walking eastbound out of a rail yard located near the intersection of 27th Ave. N.E. and 6th St. N.E. in Northeast Minneapolis. (Id., Ex. A (York Dep. at 19, 37); Ex. B (Smith Dep. at 20-21).) Plaintiff denies that he was in the rail yard. Instead he asserts that he was walking south on 6th St. N.E. when he was stopped by police. (Id. Ex. C (Teichberg Dep. at 68).) The three were wearing dark clothing and Plaintiff was carrying a long, metal object. (Id., Ex. C (Teichberg Dep. at 77, 83); Ex. B (Smith Dep. at 23-24); Ex F.)

---

[1] The parties assert that Olivia Katz, a co-plaintiff, has settled her case in accordance with Fed. R. Civ. P. 68.

Officers Smith and York stopped their patrol car, and got out to talk with these individuals. (Id., Ex. A (York Dep. at 42); Ex. B (Smith Dep. at 22).) Plaintiff claims that when stopped, the officers initially told them that they were investigating some recent car break-ins. (Id., Ex. C (Teichberg Dep. at 80-82).) Officer Smith asked Plaintiff what was in his hand, and he replied it was a camera mount. (Id. Ex. B (Smith Dep. at 24); Ex. C (Teichberg Dep. at 77).) Officers then pat searched them and looked into their backpacks. (Id., Ex. A (York Dep. at 44 and 46, Exs. 4 and 5); Ex. B (Smith Dep. at 24-25, 28-29); Ex. C (Teichberg Dep. at 82-84).) Inside Plaintiff's backpack, the officers observed cameras, video cameras, a computer, cables, maps, RNC protest schedules and anarchist literature. (Id., Ex. A (York Dep. at 46, Exs. 4 and 5); Ex. B (Smith Dep. at 28-29).) Officer York then requested assistance of Sergeant Johnson, who arrived shortly thereafter. (Id. Ex. A (York Dep. at 69-70).

Plaintiff and his companions were then placed in the back of a squad car, and were brought out of the car one by one and were questioned. (Id., Ex. C (Teichberg Dep. at 84).) They were asked for identification, asked where they were staying, where they lived and where they were headed. (Id., Ex. A (York Dep. at 44); Ex. C (Teichberg Dep. at 84).) Plaintiff told the officers that he was

from New York, and that he was staying in Minnesota for a week and a half. (Id., (Ex. A (York Dep. Ex. 4).) He further told them he was staying with someone named Bruce, who lived nearby, and that he worked with the other two individuals. (Id.) Katz told the officers that she was also from New York, was a film student, and was in Minnesota to help Plaintiff document the RNC. (Id.)

Plaintiff denied being in the rail yard. (Id.) He claimed that he and Katz had gone to a bus stop to pick up Braithwaite, who had taken the Megabus to Minneapolis from Chicago. (Id.) Braithwaite confirmed that she had just arrived into town from Chicago on the Megabus, and that she was staying nearby but that she didn't know the name of the person with whom she was staying. (Id.) The officers reported that the three appeared to be very nervous, and that none of them could explain why they were walking around at a late hour, in the railroad yard, with camera equipment. (Hiveley Aff., Ex. A (York Dep. at 44, Ex. 4).)

The officers checked the identifications of Plaintiff, Katz and Braithwaite to determine whether any of them had outstanding warrants. (Id., Ex. A (York Dep. at 48-49).) Once this check was completed, the officers told them they could leave, but that the officers were going to detain their equipment. (Id., Ex A (York Dep. at 46); Ex. B (Smith Dep. at 35); Ex. C (Teichberg Dep. at 85-86).) The

purpose of detaining the equipment was to allow the officers the opportunity to apply for a search warrant to search the contents of the cameras and the computer for evidence. (Id., Ex. A (York Dep. at 46-47, Ex. 4).) The stop lasted approximately 45 minutes. (Id., Ex. A (York Dep. at 49); Ex. B (Smith Dep. at 30).)

Plaintiff claims that the officers initially told them they were investigating car break-ins, but that they later told them they had the authority to stop and investigate them through the Department of Homeland Security. (Id., Ex. C (Teichberg Dep. at 93).)

A search warrant for the Plaintiff's camera and computer was applied for, but the application was denied. (Id., Ex. D (Stiller Dep. at 40, 43), Ex. A (York Dep. Ex. 4).) Plaintiff's equipment was made available to him shortly after 4 p.m - which was approximately 14 hours after it was seized. (Id., Ex. D (Stiller Dep. at 46-47); Ex. A (York Dep. Ex. 4).)

Plaintiff has asserted a number of claims against the Defendants as a result of the investigative stop and temporary seizure of his equipment and computer. He asserts violations of his constitutional rights under the First, Fourth and Fourteenth Amendment, a violation of the Privacy Protection Act, 42 U.S.C. § 2000aa, False Arrest, False Imprisonment, Invasion of Privacy, Trespass to

5

Chattels, and conversion.

In support of his claims, Plaintiff alleges that he was a member of the Glassbead Collective - which is an independent news-gathering organization that gathers audio, video and photographs evidence of unlawful police conduct. (Complaint ¶ 29.) He asserts that he was in Minneapolis, Minnesota in order to record events for the Glassbead Collective, but that after his detention in the early mornings hours on August 26, 2008, his ability to be effective in gathering evidence was compromised. (Hiveley Aff., Ex. C (Teichberg Dep. at 13-14).) He felt extremely threatened to be out on the streets, fearing the police. (Id.) Plaintiff also feels that the detention affected his ability to interact with what was happening at the RNC protests, and it affected his ability to coordinate the project. (Id.) Because he was not able to produce anything for the Glassbead Collective, he lost out on thousands of dollars that he could have made by selling his footage to the news media. (Id. at 117.)

Defendants now move for summary judgment, and ask that all claims against them be dismissed as Defendants are protected from suit by qualified and/or official immunity.

## II. Summary Judgment Standard

Summary judgment is appropriate if, viewing all facts in the light most favorable to the non-moving party, there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The party seeking summary judgment bears the burden of showing that there is no disputed issue of material fact. Celotex, 477 U.S. at 323. This burden can be met "by 'showing' - that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case." Id. at 325. The party opposing summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir.1995).

### A. Claims against Sgt. Nordine and John Doe

Defendants first argue that the claims against Sgt. Nordine and John Doe must be dismissed, as such individuals cannot be held liable for an allegedly unconstitutional act of their fellow officers. See, e.g., Doran v. Eckold, 409 F.3d 958, 965 (8th Cir. 2005)(holding § 1983 liability is personal); Grayson v. Ross, 454 F.3d 802, 809-10 (8th Cir. 2006); Heartland Academy Community Church v.

Waddle, 595 F.3d 798 (8th Cir. 2010) ("Section 1983 does not sanction tort by association."). There is no evidence that Sgt. Nordine or an unnamed officer participated in the decision to investigate Plaintiff or his property. Sgt. Nordine merely reviewed Officer Smith's report. (Hiveley Aff., Ex. E (Nordine Dep. at 10-11.) Accordingly, the claims asserted against Sgt. Nordine and John Doe will be dismissed.

B.  **Qualified Immunity**

When bringing a Section 1983 claim a plaintiff must establish (1) that he was deprived of a right secured by the Constitution or laws of the United States and (2) that the deprivation was committed under color of state law. Lugar v. Edmondson Oil Co., 457 U.S. 922, 931 (1982). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." Graham v. Connor, 490 U.S. 386, 393-94 (1989) (citation omitted). "Qualified immunity protects a government official from liability in a section 1983 action unless the official's conduct violated a clearly established constitutional or statutory right of which a reasonable person would have known." Henderson v. Munn, 439 F.3d 497, 501 (8th Cir. 2006) (citations omitted). "The purpose of qualified immunity is to allow public officers to carry

out their duties as they believe are correct and consistent with good public policy, rather than acting out of fear for their own personal financial well being." Sparr v. Ward, 306 F.3d 589, 593 (8th Cir. 2002) (citation omitted).

To determine whether officers are entitled to qualified immunity, the Court must consider whether the officers violated a constitutional or statutory right and whether such right was clearly established at the time of the alleged violation. Saucier v. Katz, 533 U.S. 194, 201 (1985). "Whether a given set of facts entitles the official to summary judgment on qualified immunity grounds is a question of law. But if there is a genuine dispute concerning predicate facts material to the qualified immunity issue, there can be no summary judgment." Greiner v. City of Champlin, 27 F.3d 1346, 1352 (8th Cir. 1994) (citations omitted).

1.  **First Amendment**

With regard to his First Amendment claim, Plaintiff focuses on the fact that Sgt. Stiller sought a criminal complaint against him for trespassing even though Sgt. Stiller had obtained the following information: verification from Plaintiff's host, Bruce Shoemaker, that Plaintiff was staying with him; verification that Plaintiff, Katz and Braithwaite had just gotten off a bus at Washington and 27th Ave. N.E. prior to the investigative stop; that his application for a search warrant

9

for Plaintiff's backpack had been denied. Ultimately, Assistant City Attorney Timothy Richards declined to issue a criminal complaint. It is Plaintiff's position that Sgt. Stiller sought to chill Plaintiff's First Amendment rights by seeking a criminal complaint against him. Plaintiff argues that clearly established law prohibits police persecution for expression, regardless of the outcome of the prosecution.

In support of his First Amendment claim, Plaintiff cites to <u>Dombrowski v. Pfister</u>, 380 U.S. 479, 486 (1965). <u>Dombrowski</u>, however, involved the constitutionality of a state statute which specifically regulated expression. Here, Sgt. Stiller sought a complaint as to trespass - a crime completely unrelated to expression. Thus, <u>Dombrowski</u> does not apply here.

Plaintiff further cites the Court to <u>Gainor v. Rogers</u>, 973 F.2d 1379, 1388 (8th Cir. 1992) in support of his claim. <u>Gainor</u>, however, involved a fact situation in which the plaintiff had been arrested while engaging in religious expression. Here, the evidence is undisputed that Plaintiff was not engaged in any expressive conduct at the time he was initially detained, and there is no evidence that any officer, including Sgt. Stiller, knew that Plaintiff was a journalist and that he planned to disseminate material to the public. Plaintiff admitted during his

deposition that he did not know if he had his "press credentials" with him on the night he was stopped and his backpack was seized. (Hiveley Aff., Ex. D (Teichberg Dep. at 110).) Further, he makes no claim that he told the officers that night that he was a journalist. The officers all testified that they were not aware that Plaintiff or his companions were journalists. Under these circumstances, the Court finds that Sgt. Stiller is entitled to qualified immunity with respect to Plaintiff's claim under the First Amendment as Plaintiff has failed to demonstrate genuine issues of material fact that his First Amendment rights were implicated when Sgt. Stiller sought a criminal complaint against him for criminal trespass.

Even if the officers were aware that Plaintiff and his companions were working for the Glassbead Collective, there is no authority which supports the proposition that a police offer's decision to enforce a law "is unconstitutional if it can be shown that he has enforced the law in a 'selective" manner . . . [in order] to 'chill' future First Amendment activity that the violator *may* be contemplating." Cross v. Mokwa, 547 F.3d 890, 897 (8th Cir. 2008).

2. **Fourth Amendment**

Plaintiff further asserts that his rights under the Fourth Amendment were violated when the police seized his person and his backpack. To support an

investigative stop, police must have "reasonable suspicion, based upon articulable facts, that criminal activity is afoot." United States v. Dixon, 51 F.3d 1376, 1381 (8th Cir. 1995); Terry v. Ohio, 392 U.S. 1, 21 (1968).

The record supports a finding that the officers had a reasonable suspicion based on articulable facts that Plaintiff and his companions may have committed trespass. The record in this case establishes that Officers York and Smith saw them walking either out of, or adjacent to, a rail yard in the early morning hours, wearing dark clothing. Plaintiff was also observed carrying a long, dark metal object in his hand. In addition, the stop occurred right before the RNC, which was expected to draw many protestors. As a result, officers were told to keep a heightened watch for suspicious activity. Furthermore, the stop only lasted approximately 45 minutes, and Plaintiff does not allege that the officers did anything other than ask him questions - he was not threatened nor was force used against him.

Plaintiff next argues that his backpack was unreasonably searched without a warrant. When the subject of an investigatory stop is in possession of a backpack, officers can search the backpack if there is concern that the subject is armed and dangerous. United States v. Summe, 182 Fed. Appx. 612, 615 (8th Cir.

12

2006) (citing New York v. Class, 475 U.S. 106, 117 (1968)) (concern that black duffle bag contained a weapon justified its search). Based on the facts outlined above, the officers were justified in their initial search of the backpack at the scene to determine whether it contained a weapon.

With respect to the seizure of the backpack, Defendants argue that they are entitled to qualified immunity if there was arguable probable cause that the backpack contained contraband or evidence of a crime. Illinois v. Gates, 462 U.S. 213, 238 (1983). Defendants assert that arguable probable cause existed to seize the backpack based on the facts as outlined. In addition, after observing that Plaintiff's backpack contained a camera, computer, and RNC protest schedules and anarchist materials, officers asked Plaintiff about his activities. The officers believed that Plaintiff's responses were evasive and vague. On the facts available to the officers at the time the decision was made to seize the backpack and apply for a search warrant, Defendants argue the temporary seizure of the backpack was not unreasonable.

Plaintiff asserts that the seizure of the backpack was unreasonable, arguing that the officers first told Plaintiff and his companions that they were investigating car thefts, and that they later changed their position, telling Plaintiff

13

they had the authority to seize his belongs under "homeland security." Plaintiff does not, however, challenge the fact that he and his friends were walking near a rail yard, in the middle of the night, and that he was carrying a long metal object. Nor does Plaintiff challenge whether officers were on heightened alert due to the upcoming RNC and the protests that were likely to take place. Finally, Plaintiff does not claim that he advised officers during the stop that he was a journalist, and that he planned to disseminate what he documented to the public. Because the facts in existence at the time of the seizure are largely undisputed, the Court finds that Plaintiff has failed to demonstrate that the seizure of his backpack violated the Fourth Amendment.

Even if the seizure of the backpack was unreasonable, Defendants are nonetheless entitled to qualified immunity if the constitutional violation was not clearly established at the time of the alleged violation. Saucier, 533 U.S. at 201.

> For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

Hope v. Pelzer, 536 U.S. 730, 739 (2002) (citations omitted).

Defendants argue that it was not clearly established that the seizure of the backpack pending a search warrant would violate that person's Fourth Amendment given the totality of the circumstances that existed at the time of said seizure. As noted above, Plaintiff has not challenged the officers recitation of the material facts leading up to the seizure: that the officers observed three individuals, in the early morning hours, walking next to a rail yard, that Plaintiff was seen carrying a long, metal object, and that it was only six days before the RNC commenced and that the officers had been placed on alert for people who may try to disrupt the RNC by disrupting transportation and critical infrastructure areas.

Pursuant to Terry v. Ohio, officers can expand an initial investigative stop upon the discovery of additional facts which develop into probable cause - and that a search or detention can ensue based on such probable cause. See United States v. Donnelly, 475 F.3d 946, 952-53 (8th Cir. 2007) (where driver of car in an accident displayed nervousness and gave an implausible itinerary, officers could use such facts to form reasonable suspicion of drug transporting, and to request dog sniff search). Based on the above, together with the fact that Plaintiff was found to be in possession of cameras, a computer, maps, RNC protest schedules

and anarchist literature, it was not clearly established that detaining the backpack pending a search warrant was a violation of Plaintiff's Fourth Amendment rights. Defendants are thus entitled to qualified immunity as to Plaintiff's claims that his Fourth Amendment rights were violated.

C.     **Privacy Protection Act**

In his Complaint, Plaintiff alleges that his rights under the Privacy Protection Act ("PPA"), 42 U.S.C. 2000a, were violated.  The PPA prohibits government officials from searching for and seizing documentary evidence possessed in connection with a purpose to disseminate to the public and "requires law enforcement to rely on the cooperation of the media or subpoenas duces tecum to obtain such documentary materials."  Citicasters v. McCaskill et al., 89 F.3d 1350, 1353 (8th Cir. 1996).

Defendants argue that Plaintiff has failed to state a claim under the PPA. According to Plaintiff, he was not going to disseminate material to the public, he was going to sell his material to the media for a profit.  (Id. Ex. C (Teichberg Dep. at 13).)  Also, there is no evidence before the court that Plaintiff identified himself as a journalist who was intending to disseminate information to the public.  (Id. at 110 (Plaintiff testified that he does not recall if he had press credentials with

him at the time he was stopped).) Finally, his personal property was detained for a reasonable amount of time, and returned to Plaintiff the same day it was seized. Defendants argue that based on these undisputed facts, Plaintiff has failed to state a claim.

In his response, Plaintiff claims that Sgt. Stiller, at some point, learned that he was a journalist, yet still pressed his investigation. Plaintiff points to no evidence, however, which supports Plaintiff's belief that Sgt. Stiller, or any of the officers involved, knew Plaintiff was a journalist. At his deposition, Sgt. Stiller testified only that he could not recall if he had seen any media reports about the stop involving Plaintiff before he sought the search warrant for the backpack. (Hiveley Aff., Ex. D (Stiller Dep. at 44).) No officers testified that they knew that Plaintiff was a journalist, nor did Plaintiff claim to have told them he was a journalist. (Id. Ex. C (Teichberg Dep. at 110-112).) Plaintiff has thus failed to demonstrate a genuine issue of material fact that the officers knowingly seized documentary evidence that was in the possession of one with a purpose to disseminate it to the public.

Even if the officers had knowledge that Plaintiff was a journalist, the PPA provides for exceptions to its prohibitions. Citicasters, 89 F.3d at 1353.

For example, law enforcement may search or seize documentary evidence where there is probable cause to believe the person possessing such materials has committed or is committing a criminal offense to which the material relates. Id. (citing 42 U.S.C. § 2000aa(b)). As discussed above, Plaintiff has failed to raise genuine issues of material fact that the temporary seizure of the Plaintiff's backpack was unreasonable. Accordingly, Defendants are entitled to summary judgment as to this claim.

### D. State Law Claims

#### 1. Official Immunity

Defendants assert that they entitled to official immunity against Plaintiff's state tort claims. In Minnesota, a police officer is entitled to official immunity from state law claims when such police officer is charged by law with duties that require the exercise of judgment or discretion. Johnson v. Morris, 453 N.W.2d 31, 41 (Minn. 1990). Official immunity may be defeated only by proof that the officer acted willfully or with malice. Watson v. Metropolitan Transit Commission, 553 N.W.2d 406, 412 (Minn. 1996). An officer is said to have acted willfully or maliciously if he "intentionally commits an act that he or she then has reason to

believe is prohibited." Rico v. State, 472 N.W.2d 100, 107 (Minn. 1991). An act is considered to be ministerial, rather than discretionary, when the act is "absolute, certain, and imperative, involving merely the execution of a specific duty arising from fixed and designated facts." Anderson v. Anoka Hennepin Indep. Sch. Dist. 11, 678 N.W.2d 651, 656 (Minn. 2004) (internal citations omitted).

Minnesota law provides that generally, police officers are discretionary officials. Dokman v. County of Hennepin, 637 N.W.2d 286, 296 (Minn. Ct. App. 2001); Elwood v. County of Rice, 423 N.W.2d 671, 678 (Minn. 1988) (recognizing need to afford police officers a wide degree of discretion so that police action is not inhibited). In addition, the Court finds that Plaintiff has failed to put forth any evidence which would tend to show that the officers acted willfully or with malice when they conducted the investigative stop of Plaintiff and his friends, and when the backpack was detained pending application for a search warrant.

Based on the Court's determination that the individual officers are entitled to official immunity, the Court further finds that the City of Minneapolis is entitled to vicarious official immunity as to Plaintiff's respondeat superior claims. See, Wiederholt v. City of Minneapolis, 581 N.W.2d 312, 316 (Minn. 1998). ("[g]enerally, if the employee is found to have immunity, the claim against the

municipal employer has been dismissed without explanation.")

Accordingly, the Court finds that Defendants are entitled to official immunity against the asserted state law claims, and summary judgment in favor of Defendants is appropriate.

IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment [Doc. No. 11] is GRANTED and that judgment be entered herein in Defendants' favor and against Plaintiff Vladimir Teichberg.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Date: August 17, 2010

s/ Michael J. Davis<br>
Michael J. Davis<br>
Chief Judge<br>
United States District Court